# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**NAZIR A. SAYAR**,
Kabul, Afghanistan
Email: sayardevelopment.inc@gmail.com
Telephone: +93 777 406070
**Plaintiff,**
v.
**PETE HEGSETH,**
in his official capacity as Secretary of Defense,
U.S. Department of Defense,
1000 Defense Pentagon, Washington, DC 20301,
**DEFENSE FINANCE AND ACCOUNTING SERVICE,**
8899 East 56th Street, Indianapolis, IN 46249, and
**DEPARTMENT OF DEFENSE OFFICE OF INSPECTOR GENERAL,**
4800 Mark Center Drive, Alexandria, VA 22350-1500,
**Defendants.**
Civil Action No. _____

Case: 1:26–cv–00102 JURY DEMAND
Assigned To : Unassigned
Assign. Date : 1/13/2026
Description: Pro Se Gen. Civ. (F–DECK)

COMPLAINT FOR UNLAWFUL AGENCY ACTION, UNLAWFULLY WITHHELD RECORDS, AND UNLAWFUL RECORDKEEPING / CONCEALMENT (APA & FOIA) AND FALSE CLAIMS ACT RETALIATION; AND FOR DECLARATORY RELIEF
(31 U.S.C. § 3730(h); 5 U.S.C. §§ 702, 706; 5 U.S.C. § 552(a)(4)(B); 28 U.S.C. §§ 2201–2202)

JURY TRIAL DEMANDED (TO THE EXTENT AVAILABLE BY LAW)

## I. INTRODUCTION

1. Plaintiff Nazir A. Say> Sayar ("Plaintiff") brings this civil action arising from a long-running pattern of retaliatory and obstructive actions taken after Plaintiff engaged in lawful efforts to stop, oppose, and expose what Plaintiff reasonably believed were false records, false certifications, and unlawful payment avoidance affecting U.S. Army contracts administered through Department of Defense components.

2. Plaintiff's protected activity included, among other things, objecting to and seeking correction of: (i) withheld and "returned" invoices; (ii) payment-routing irregularities; (iii) misleading payment certifications; and (iv) government record positions that denied the existence of DFAS invoice-return evidence while dispositive motions were pending.

3. In the most recent limitations-period adverse access actions, on April 23, 2024 the JCCS Helpdesk stated that that it cannot review accounts/contracts and that there is a "freeze on all activities with Afghan vendors," and on July 1, 2024 CPARS Program Management Office/Technical Support stated that Contract No. W90U42-11-P-2062 "does not exist in CPARS" and directed Plaintiff away from any CPARS correction channel. Plaintiff pleads these denials as actionable access barriers causing ongoing harm.

4. Plaintiff further alleges that, during pending dispositive motion practice at the ASBCA, Government counsel's July 25, 2024 submission denied returned-invoice evidence and argued it was unnecessary, further prejudicing Plaintiff's ability to respond and develop a fair record.

5. Plaintiff alleges the adverse actions were part of a retaliatory and obstructive course of conduct designed to (i) defeat Plaintiff's ability to prove nonpayment and concealment, (ii) deprive Plaintiff

RECEIVED
JAN 13 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

of fair process, and (iii) punish and deter Plaintiff's continued fraud-opposition and record-challenge activity.

6. Plaintiff seeks: (a) retaliation relief under 31 U.S.C. § 3730(h) (pleaded in the alternative and to the extent permitted by sovereign immunity and applicable law); and (b) non-monetary relief under the Administrative Procedure Act ("APA") to compel lawful record handling and to enjoin continued reliance on false or misleading record positions.

7. This action seeks judicial review and record production, not damages on the merits. Plaintiff brings this case to compel Defendants to identify, preserve, and disclose federal records concerning: (a) the unexplained $21.3 million de-obligation reflected in FPDS and internal accounting; (b) DFAS voucher-chain, disposition, and routing records for submitted invoices; (c) CPARS and JCCS past-performance records relied upon to exclude Plaintiff from competition; and (d) investigative and payment-related records withheld through FOIA and Hotline closure.

8. Plaintiff engaged in protected activity by objecting to nonpayment, record concealment, misleading public records, and unlawful payment-avoidance practices affecting DoD contracts. In response, Defendants erected access barriers, advanced misleading litigation positions, and withheld records, constituting retaliation under 31 U.S.C. § 3730(h).

9. Plaintiff brings pure APA claims for agency action unlawfully withheld and arbitrary and capricious conduct; FOIA judicial review following final agency denial; and FCA retaliation (non-qui-tam) for adverse actions taken because of Plaintiff's fraud-opposition activity.

10. Plaintiff's submission constitutes protected activity because it seeks to stop and oppose suspected use of false or misleading records and concealment of payment and funding actions to avoid Government payment obligations

See Evidentiary Appendix (attached) for keyed exhibits supporting the factual allegations and claims herein.

## II. JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including 31 U.S.C. § 3730(h), 5 U.S.C. §§ 702 and 706, and 5 U.S.C. § 552(a)(4)(B).

12. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201–2202.

13. To the extent Plaintiff seeks non-monetary relief against federal agencies and officers for unlawful action and unlawful withholding of required action, the APA provides a waiver of sovereign immunity. 5 U.S.C. § 702.

14. This Court has jurisdiction to conduct de novo review and order production under FOIA, 5 U.S.C. § 552(a)(4)(B).

15. Venue is proper in this District under 28 U.S.C. § 1391(e) because Defendants are agencies/officers of the United States and maintain official headquarters and decision-making authority in the District of Columbia, and because key recordkeeping and litigation positions were directed and maintained through DoD component structures that operate from this District.

## III. PARTIES

16. Plaintiff Nazir A. Sayar is an individual residing in Kabul, Afghanistan, who served as owner/leader of a DoD prime contractor during the relevant period and who engaged in protected activity by

opposing and attempting to stop suspected fraud and false records affecting federal contract payments and government record systems.

17. Defendant Pete Hegseth is sued in his official capacity as Secretary of Defense and is responsible for overall DoD policy, component oversight, and lawful administration of DoD functions, including DFAS and contracting oversight.

18. Defendant Department of Defense ("DoD") is a federal agency responsible for DoD contracting components and policies that governed the challenged recordkeeping, litigation positions, and payment administration.

19. Defendant Defense Finance and Accounting Service ("DFAS") is a DoD component responsible for payment processing, payment recordkeeping, and maintenance of payment documentation relevant to this dispute.

20. Defendant Department of Defense Office of Inspector General ("DoD OIG") is a DoD component responsible for FOIA processing and investigative records relevant to Plaintiff's Hotline complaint.

## IV. FACTUAL ALLEGATIONS

### A. 2012: Government Confirms SDI Had a Negative JCCS Rating and Used It to Block Competition

21. On October 20, 2012, SDI contacted the U.S. Army Corps of Engineers ("USACE") Kansas City District to prepare a bid for RFP No. W912DQ-13-R-4009 and provided SDI's identifying information (company name, DUNS 850494182, contact info, and the RFP number).

22. On October 23, 2012, MSG Mark A. McKinney, Contract Specialist, USACE Kansas City District, responded in writing: "Your company has a poor performance rating in JCCS."

23. This communication is direct evidence that (a) an adverse past performance rating existed for SDI in JCCS and (b) procurement personnel used that JCCS record to prejudice SDI's ability to compete for awards.

    **Exhibit A-1: USACE Email** "Poor performance rating in JCCS" (Oct. 23, 2012) (RFP W912DQ-13-R-4009).

### B. 2024: Plaintiff Attempts to Obtain and Correct CPARS/JCCS Records; Systems Deny Access and Redirect Responsibility

24. On April 22, 2024, Plaintiff contacted CPARS/NSLC Help Desk regarding ASBCA-related past performance concerns and was advised that the CPARS Help Desk provides only technical support (access/connectivity/navigation), is not staffed to answer policy questions, and cannot act on Plaintiff's behalf; Plaintiff was directed to seek agency legal/policy channels.

    **Exhibit A-2: CPARS/NSLC Help Desk** "Technical Support Only / No Policy Authority" (Apr. 22, 2024).

25. On April 23, 2024, Plaintiff contacted the DLA JCCS Helpdesk seeking assistance with SDI's past performance records, and the Helpdesk responded that it provides technical assistance for the website only and does not review accounts or deal with contracts, directing Plaintiff to contact a contract office.

    **Exhibit A-3: JCCS Helpdesk** "Technical Assistance Only; Do Not Review Accounts or Deal with Contracts" (Apr. 23, 2024).

26. Also on April 23, 2024, the JCCS Helpdesk stated in writing that "There is a freeze on all activities with Afghan vendors at this time," which functionally prevents Plaintiff from accessing, verifying, or correcting JCCS past performance records through JCCS channels.

**Exhibit A-4: JCCS Helpdesk** "Freeze on all activities with Afghan vendors" (Apr. 23, 2024) (Ticket JC-2024-01342).

27. On June 26, 2024, CPARS Program Management Office/Technical Support (NSLC Help Desk) responded that Contract No. W90U42-10-D-2006 "does not exist in CPARS," and stated that if disputes or correction requests existed, Plaintiff must work directly with the agency that wrote the evaluation because CPARS PMO has no authority to correct records.

**Exhibit A-5:** CPARS PMO/NSLC Help Desk "W90U42-10-D-2006 does not exist in CPARS" (Jun. 26, 2024).

28. On July 1, 2024, CPARS PMO/NSLC Help Desk responded that Contract No. W90U42-11-P-2062 "does not exist in CPARS," and likewise directed Plaintiff to the authoring agency for any disputes or corrections.

**Exhibit A-6 (Primary APA Anchor):** CPARS PMO/NSLC Help Desk "W90U42-11-P-2062 does not exist in CPARS" (Jul. 1, 2024).

29. These 2024 responses show that (a) CPARS does not display either contract number for SDI, (b) JCCS technical support disclaims authority over accounts/contracts, and (c) a separate "freeze" bars Afghan-vendor activity—together creating a barrier that prevents Plaintiff from obtaining the underlying adverse performance record, receiving notice, or exercising any rebuttal/correction process, despite the Government's prior reliance on JCCS to harm SDI in procurement decisions.

## C. DoD OIG FOIA Denial – Continued Concealment of Hotline Records

30. On December 17, 2025, the DoD OIG Appellate Authority denied Plaintiff's FOIA appeal (DODOIG-2026-A-000001) for records on his Hotline complaint (20250805-105348), upholding redactions under Exemptions (b)(6), (b)(7)(C), and (b)(7)(E), and denying a Vaughn Index. The decision admits records exist (32 pages released/redacted) but withholds further information, further demonstrating Defendants' ongoing concealment of material records related to Plaintiff's protected activity and the underlying fraud allegations. Plaintiff pleads this for diligence, notice, and continuing violation.

**Exhibit D-1: DoD OIG FOIA Appeal Decision** (Dec. 17, 2025).

## D. Plaintiff's Protected Activity (Efforts to Stop or Oppose Suspected Fraud / False Records)

31. Plaintiff repeatedly acted to stop, oppose, and expose conduct Plaintiff reasonably believed violated the False Claims Act, including false records and reverse-false-claim style payment avoidance (e.g., false "fully paid" positions, concealment of invoice defects/returns, and record positions inconsistent with actual DFAS documentation).

32. Plaintiff's protected activity included written disputes, invoice submissions, requests for payment vouchers and invoice history, and challenges to government record positions in administrative litigation.

33. Plaintiff's protected activity also included seeking oversight review through available government channels and records processes. For example, DoD OIG correspondence addressing reprisal

jurisdiction demonstrates Plaintiff pursued reprisal-related avenues and that DoD framed the matter as a "larger contracting dispute."

**33A.** On September 8, 2025, Plaintiff received written notice from the U.S. Office of Special Counsel ("OSC") that OSC completed its review of Plaintiff's disclosure (OSC File No. DI-25-002381) and closed the matter for lack of jurisdiction because Plaintiff is not a federal employee under 5 U.S.C. § 2105. OSC's closure reflects Plaintiff's diligence in pursuing available oversight channels and further demonstrates that administrative avenues repeatedly redirected or declined review, leaving judicial review and record-production as the only effective remedy.

## E. Defendants' Knowledge

34. Defendants, through their agents, counsel, and components, knew of Plaintiff's protected activity because Plaintiff's challenges were made through formal contract/payment communications and through administrative litigation filings and requests for DFAS documentation.

35. Defendants had actual notice that Plaintiff was challenging invoice/payment record accuracy because those issues were expressly presented to the ASBCA and addressed in government responses.

## F. Adverse Actions1. July 25, 2024 ASBCA Obstruction / Misrepresentation About "Returned Invoices"

36. On July 25, 2024, in response to an ASBCA order regarding Plaintiff's request to supplement the Rule 4 file with DFAS vouchers, invoices, and returned invoices for non-payment, government counsel stated that the government was "unaware of any invoices … rejected or returned for non-payment," asserted there were no other documents, and argued the information was not pertinent or necessary while a dispositive motion was pending.

    **Exhibit C-1: Government Counsel Submission to ASBCA** (Jul. 25, 2024).

37. Plaintiff alleges this action was materially adverse because it was calculated to obstruct Plaintiff's proof of nonpayment/record concealment and to prejudice Plaintiff's ability to respond to dispositive motions.

38. DFAS documentation within the broader record demonstrates that invoices were in fact returned unprocessed with instructions to correct and resubmit, directly contradicting any categorical narrative that "returned invoices" do not exist as a factual matter.

    **Exhibit B-1: DFAS Returned / Unprocessed Invoice Records** (2011–2013).

## 2. Ongoing Record-Control and Concealment

39. Plaintiff alleges Defendants controlled and withheld or restricted disclosure of relevant payment and investigative information over time, including through FOIA determinations that maintained redactions and limited segregable release, reinforcing that key details remained uniquely within government control.

40. Plaintiff alleges that these record-control actions—combined with adverse litigation positions—functioned as retaliation and obstruction designed to deter Plaintiff from continuing protected activity.

## G. Normal Invoice Processing Confirmed Before March 2011

41. From February 2010 through early 2011, Plaintiff submitted invoices under Contract No. W90U42-10-D-2006. Multiple invoices were accepted and paid, with DD-250 acceptance and DFAS vouchers issued, confirming ordinary processing and the existence of DFAS voucher-chain records.

## H. DFAS "Pay-Station Deviation" Hold Confirms Invoice Receipt and Government-Caused Delay

42. On March 1, 2011, DFAS emailed Plaintiff (copying the Contracting Officer) stating that "several invoices are on hold" pending a modification to allow "different pay stations per task order." This communication confirms: (i) DFAS received and possessed Plaintiff's invoices; (ii) payment was held for Government-internal reasons, not invoice defects; and (iii) a modification was required solely to unlock processing, not to alter entitlement.

43. FAR 52.232-37 (Multiple Payment Arrangements) authorizes only administrative routing changes. It does not change contract scope, award structure, ceiling, minimum guarantees, or permit payment to third parties.

## I. Unexplained $21.3 Million De-Obligation and Conflicting Public Records

44. FPDS reflects a –$21.3M reduction associated with Modification P00001, despite no bilateral modification reducing the contract ceiling and despite a later bilateral option exercise affirming unchanged terms. Defendants have never produced the underlying instrument, accounting classification (ACRNs), or funding tables.

45. Whether the $21.3M was (a) diverted, (b) parked/reprogrammed, or (c) returned to Treasury, Defendants must disclose the records identifying what happened to the funds and who, if anyone, received them.

## J. CPARS/JCCS Access Denials (Final Agency Action)

46. In 2024, CPARS and JCCS officials stated that Plaintiff's contracts "do not exist" in CPARS, disclaimed authority to correct records, and imposed a "freeze on all activities with Afghan vendors." These denials prevent notice, rebuttal, and correction and constitute final agency action.

## K. ASBCA Obstruction and Misrepresentation

47. During ASBCA proceedings, Plaintiff requested supplementation of the Rule 4 record with DFAS voucher-chain, disposition, and returned/unprocessed invoice records and objected to misleading record positions concerning nonpayment. In response, Government counsel asserted ignorance of returned invoices and argued DFAS records were unnecessary—despite DFAS's own acknowledgment that invoices were received and held—thereby obstructing Plaintiff's efforts to expose and correct suspected false or misleading record positions and prejudicing Plaintiff's ability to develop a fair record.

## L. FOIA Exhaustion and "No Further Action" Hotline Closure

48. Plaintiff pursued FOIA and oversight remedies. On December 17, 2025, DoD OIG issued a final FOIA appeal decision, admitting records exist but withholding them and denying a Vaughn index.

49. The DoD Hotline subsequently closed Plaintiff's complaint with a "No Further Action" notice, exhausting administrative remedies without adjudicating the merits or producing records.

## M. Causation

50. The adverse actions were taken because of Plaintiff's protected activity. The July 25, 2024 filing occurred in direct response to Plaintiff's request for DFAS invoice/payment evidence, and in the

context of dispositive motion practice where such evidence would materially affect Plaintiff's ability to contest the government's narrative.

51. Defendants' conduct would deter a reasonable contractor or individual from continuing to oppose suspected fraud or false records, given the foreseeable effect of record concealment and prejudicial litigation positions.

## N. Timeliness

52. Plaintiff's retaliation claim is timely at least as to the July 25, 2024 adverse action, which falls within the applicable limitations period for 31 U.S.C. § 3730(h).

53. To the extent earlier acts are considered, Plaintiff pleads accrual-suspension / equitable tolling based on concealment and exclusive government control of material facts, and pleads an ongoing course of retaliatory obstruction culminating in the July 25, 2024 action.

## O. Timeliness and Most Recent Adverse Action (Within Three Years)

54. Plaintiff pleads the existence of an adverse JCCS past performance record as background, but does not rely on any 2012 communication as the limitations-period adverse act. The actionable adverse conduct is Defendants' continuing denial of access to, and inability to correct, adverse past performance information during the limitations period.

55. On July 1, 2024, the CPARS Program Management Office/Technical Support (NSLC Help Desk) responded in writing that Contract No. W90U42-11-P-2062 "does not exist in CPARS" and stated that if an evaluation existed, disputes or correction requests would have to be addressed directly with the authoring agency because CPARS PMO has no authority to correct the record. Plaintiff pleads this written denial of access and lack of corrective process as the most recent adverse action within the limitations period.

56. This July 1, 2024 denial was part of a continuing pattern of adverse access barriers during 2024–2025, including: (a) the June 26, 2024 CPARS PMO response stating Contract No. W90U42-10-D-2006 "does not exist in CPARS" and likewise directing Plaintiff away from CPARS correction channels; (b) the April 23, 2024 JCCS Helpdesk responses stating it provides technical support only, does not review accounts or deal with contracts, and further stating "There is a freeze on all activities with Afghan vendors at this time," preventing Plaintiff from accessing or correcting JCCS records; and (c) Plaintiff's subsequent 2025 requests for audit/verification and correction of past performance records, which were rerouted, closed, or not meaningfully addressed.

57. Plaintiff alleges these denials and barriers are materially adverse because they prevent Plaintiff from obtaining the performance record, receiving notice, submitting rebuttal comments, or pursuing correction, while adverse performance narratives continue to be used to impair Plaintiff's contracting eligibility and cause ongoing harm.

## P. Keystone Significance of the July 12, 2024 ASBCA Order

58. The July 12, 2024 ASBCA Order is a keystone directive, not procedural noise. It precisely identified the contract at issue (W90U42-10-D-2006) and the categories of DFAS records required to enable meaningful response to dispositive motions. Defendants' failure to comply with that directive—by answering a different contract and collapsing non-payment into "returned invoices"—is the gravamen of the APA violations pleaded herein.

## Q. Standalone APA Count Paragraph (Focused Solely on "Wrong Contract" Defect)

59. Defendants violated the Administrative Procedure Act, 5 U.S.C. §§ 706(1) and 706(2), by failing to comply with the Armed Services Board of Contract Appeals' July 12, 2024 Order directing supplementation of the Rule 4 file with DFAS payment vouchers, invoices, and returned invoices for non-payment pertaining specifically to Contract No. W90U42-10-D-2006. In response, Defendants' July 25, 2024 submission addressed returned invoices associated with a different contract number and disclaimed awareness of returned invoices under Contract No. W90U42-10-D-2006, thereby answering a materially different question than the one ordered. This mismatch constitutes agency action unlawfully withheld and arbitrary and capricious action, because Defendants failed to produce or identify DFAS records responsive to the contract expressly named in the Order, notwithstanding documentary evidence that invoices under Contract No. W90U42-10-D-2006 were received by the Contracting Officer and forwarded for DFAS processing. Defendants' non-responsive submission deprived Plaintiff of ordered record supplementation and obstructed meaningful review.

## R. Three Independent APA Violations
*(Each stands alone; plead cumulatively or in the alternative.)*

60. **APA Violation 1 — Wrong-Contract Substitution**
Defendants acted arbitrarily and capriciously, and unlawfully withheld required action, by responding to the ASBCA's July 12, 2024 Order with records and assertions pertaining to a different contract rather than the contract expressly identified in the Order, **Contract No. W90U42-10-D-2006**. An agency may not satisfy an order to supplement the record for a specified contract by producing records from another instrument or by disclaiming knowledge as to the specified contract while relying on unrelated materials. This wrong-contract substitution frustrated the ordered supplementation and constitutes action unlawfully withheld under **5 U.S.C. § 706(1)** and arbitrary and capricious agency action under **5 U.S.C. § 706(2)**.

61. **APA Violation 2 — False Equivalence Between "Returned" and "Non-Payment"**
Defendants acted arbitrarily and capriciously by collapsing the concept of "non-payment" into the narrow subset of "returned invoices" and treating a claimed lack of awareness of "returned" invoices as a proxy for full compliance. Non-payment can occur through multiple DFAS outcomes—including hold/suspense, exception, rejection, offset, closeout without payment, or de-obligation—each of which generates DFAS disposition and voucher-chain records independent of a formal "return." By equating "non-payment" with only "returned invoices," Defendants withheld responsive records necessary to explain the non-payment of invoices acknowledged as submitted and forwarded for DFAS processing. This constitutes arbitrary and capricious action under **5 U.S.C. § 706(2)** and unlawful withholding under **5 U.S.C. § 706(1)**.

62. **APA Violation 3 — Failure to Produce DFAS Disposition Records After Acknowledged Submission**
Defendants unlawfully withheld required agency action by failing to identify or produce DFAS invoice-disposition and voucher-chain records for invoices acknowledged by the Contracting Officer as received and forwarded for DFAS processing under **Contract No. W90U42-10-D-2006**. Where receipt and forwarding are admitted, DFAS necessarily generates a disposition record reflecting the outcome (payment, hold, exception, return, offset, de-obligation, or other disposition). Defendants' failure to produce or explain the absence of such disposition records—despite relying on record narratives to oppose supplementation—constitutes action unlawfully withheld under **5 U.S.C. § 706(1)** and arbitrary and capricious action under **5 U.S.C. § 706(2)**.

## V. CLAIMS FOR RELIEF

COUNT I — Retaliation (False Claims Act, 31 U.S.C. § 3730(h))
*(pleaded in the alternative and to the extent permitted by law)*

63. Plaintiff incorporates paragraphs 1–62 as if fully set forth herein.

64. Plaintiff engaged in protected activity under 31 U.S.C. § 3730(h) by lawful acts in furtherance of efforts to stop, report, oppose, and prevent conduct Plaintiff reasonably believed violated the False Claims Act, including opposing and seeking correction of false or misleading records, concealed funding actions, and payment-avoidance concealment affecting DoD contract payments and past-performance systems.

65. Plaintiff's protected activity included, among other actions: (a) disputing nonpayment and "returned/unprocessed" invoices; (b) requesting DFAS voucher-chain, disposition, and routing records; (c) challenging misleading public and litigation record positions (including positions equating "nonpayment" with only "returned invoices"); (d) pursuing FOIA to obtain withheld payment, modification, and investigative records; and (e) reporting and seeking oversight review through DoD hotline channels and other government processes.

66. Defendants knew of Plaintiff's protected activity because Plaintiff's objections and record challenges were communicated through contract/payment correspondence, administrative litigation filings and requests for DFAS documentation, FOIA submissions and appeals, and oversight reporting and hotline submissions.

67. After and because of Plaintiff's protected activity, Defendants took materially adverse actions against Plaintiff, including but not limited to:
(a) denying access and correction processes for CPARS/JCCS records by stating the contracts "do not exist" in CPARS and by disclaiming authority to correct records;
(b) maintaining or enforcing an Afghan-vendor "freeze" that functionally blocked Plaintiff's access to or correction of JCCS activity;
(c) refusing to identify responsible record custodians and refusing or failing to produce DFAS disposition records and voucher-chain records despite acknowledged invoice submissions and DFAS invoice holds; and
(d) taking obstructive and misleading record positions during ASBCA dispositive-motion practice, including the July 25, 2024 submission denying awareness of returned/rejected invoices and arguing DFAS evidence was unnecessary.

68. Defendants' adverse actions were causally connected to Plaintiff's protected activity, and the actions alleged herein would deter a reasonable contractor or individual from continuing to oppose suspected fraud, false records, concealment, or payment-avoidance practices.

69. Plaintiff seeks all relief authorized by 31 U.S.C. § 3730(h)(2), to the extent permitted by applicable law, including compensatory damages, special damages, and costs.

*69A: Plaintiff pleads this count in the alternative and seeks such relief only to the extent sovereign immunity is waived or otherwise permitted by applicable law.*

COUNT II — Administrative Procedure Act: Agency Action Unlawfully Withheld / Arbitrary and Capricious
*(5 U.S.C. §§ 702, 706(1)–(2))*

70. Plaintiff incorporates paragraphs 1–69A as if fully set forth herein.

71. Defendants have taken and maintained final agency actions and have unlawfully withheld agency action required by law by denying Plaintiff meaningful access to, and correction of, adverse past-performance and payment records, and by failing to identify custodians and produce records necessary to verify invoice status, funding status, and contract-record accuracy, including:
(a) CPARS record entries, evaluation identifiers, notice logs, rebuttal/comment logs, and custodian identification for Contract Nos. W90U42-10-D-2006 and W90U42-11-P-2062;
(b) JCCS account activity, rating/evaluation entries, supporting documentation, notice/rebuttal logs,

and custodian identification, including records reflecting the basis for adverse past-performance usage;

(c) complete DFAS voucher-chain records, invoice disposition records (including hold/suspense/exception/return/unprocessed dispositions), payment-hold documentation, and routing/pay-station records for submitted invoices; and

(d) the complete underlying instrument for Modification P00001 (all versions, attachments, and execution/issuance metadata), the accounting classification records (ACRNs), obligation/de-obligation entries, and funding tables/funding histories necessary to determine what P00001 actually changed and whether it affected contractual rights or merely internal accounting.

72. Defendants' actions and omissions are arbitrary, capricious, an abuse of discretion, contrary to law, and/or unlawfully withheld within the meaning of 5 U.S.C. § 706(1)–(2), including because Defendants:

(a) misused FAR 52.232-37 as a post hoc justification for nonpayment or altered funding narratives when the clause concerns administrative payment-office routing and does not alter contractual entitlement, contract scope, award structure, ceiling, or minimum-guarantee obligations;

(b) collapsed "nonpayment" into "returned invoices" and treated claimed lack of awareness of "returned" invoices as a proxy for compliance, despite DFAS dispositions that can reflect nonpayment without a "return";

(c) relied on distorted FPDS entries or "reduced-ceiling" narratives while withholding the underlying source records (P00001 instrument, ACRNs, funding tables, and DFAS funding/routing documentation) necessary to establish what changed and whether any change was lawful;

(d) denied or blocked meaningful access to CPARS/JCCS correction processes through "does not exist" positions, "technical only" limitations, and categorical vendor-access restrictions; and

(e) obstructed ordered and necessary record supplementation in administrative litigation by providing nonresponsive record narratives and refusing to identify or produce the DFAS disposition and voucher-chain records required to test agency assertions.

73. These actions constitute final agency action and/or agency action unlawfully withheld or unreasonably delayed and are reviewable and remediable under 5 U.S.C. § 706(1) and § 706(2).

74. Plaintiff seeks non-monetary relief only under the APA, including orders compelling custodian identification and lawful production of the categories of records described above (including the complete P00001 instrument, ACRNs, and funding tables) and enjoining continued reliance on adverse past-performance or payment narratives while access, correction, and record production remain blocked.

*74A. Plaintiff has no adequate alternative remedy to obtain timely access to and correction of these agency records and record systems, and Defendants' ongoing denials and withholding are causing continuing harm.*

## COUNT III — FOIA Judicial Review / Unlawful Withholding of Agency Records

*(5 U.S.C. § 552(a)(4)(B))*

75. Plaintiff incorporates paragraphs 1–74A as if fully set forth herein.

76. Defendants DoD and DFAS are "agencies" within the meaning of 5 U.S.C. § 552(f). The records sought are "agency records" within Defendants' possession, custody, or control, including but not limited to:

(a) the complete Modification P00001 instrument for Contract No. W90U42-10-D-2006 (all versions, attachments, and execution/issuance metadata);

(b) accounting classification references (ACRNs), obligation and de-obligation entries, and funding tables/funding change histories associated with P00001 and any related funding actions;

(c) DFAS voucher-chain records, payment-hold documentation, invoice disposition records (including hold/suspense/exception/return/unprocessed dispositions), and payment routing/pay-station records; and

(d) FPDS source records and internal contract-administration records relied upon to reflect a reduced ceiling or altered funding status, including records that cite, attach, or implement P00001.

77. Plaintiff submitted FOIA requests seeking these categories of records and timely pursued administrative appeals. Following final agency action—including the final FOIA appeal denial dated December 17, 2025—Defendants denied further disclosure and advised Plaintiff of the right to judicial review under 5 U.S.C. § 552(a)(4)(B).

78. Defendants have unlawfully withheld non-exempt records, failed to conduct an adequate search reasonably calculated to locate all responsive records, and failed to release all reasonably segregable non-exempt portions as required by 5 U.S.C. § 552(b).

79. Defendants have further violated FOIA by refusing to provide an adequate itemized justification (Vaughn index or functional equivalent) sufficient to permit meaningful judicial review of withholdings, redactions, and claimed exemptions.

80. Defendants have relied on the existence and alleged effects of P00001 (and related reduced-ceiling/funding narratives) and have used or invoked undisclosed payment and funding records to support adverse record positions and to impede Plaintiff's ability to test the accuracy and legality of those positions, while withholding the very records that define the legal and financial effect of the purported modification and funding actions.

81. Defendants' unlawful withholding has caused concrete and ongoing harm by preventing Plaintiff from determining: (a) what P00001 actually changed; (b) whether it was a lawful contract modification affecting contractual rights or merely an internal accounting adjustment; (c) the DFAS disposition and routing history for submitted invoices; and (d) the factual basis for adverse public and agency record positions.

82. Plaintiff has exhausted administrative remedies, and this Court has jurisdiction to conduct de novo review and to order production of non-exempt records, segregable release, and appropriate Vaughn indexing pursuant to 5 U.S.C. § 552(a)(4)(B).

83. Plaintiff seeks judicial intervention to compel lawful FOIA compliance and to prevent continued reliance on undisclosed or unlawfully withheld records to assert altered funding status, payment defenses, or adverse record narratives.

**83A:** *Plaintiff requests an order for an adequate search, production of non-exempt records, release of all reasonably segregable portions, and a Vaughn index (or functional equivalent) for any withholdings*

## COUNT IV — Declaratory Relief

*(28 U.S.C. §§ 2201–2202)*

84. Plaintiff incorporates paragraphs 1–83 as if fully set forth herein.

85. An actual controversy exists regarding whether Defendants' record positions and concealment actions constitute unlawful retaliation and unlawful agency action.

86. Plaintiff seeks a declaration identifying the July 25, 2024 record position and related concealment actions as unlawful and retaliatory, and clarifying Plaintiff's rights to accurate record handling and non-retaliatory treatment.

## VI. DAMAGES AND RELIEF SOUGHT

87. Plaintiff suffered substantial harm, including economic harm, professional harm, and litigation prejudice resulting from Defendants' adverse actions and obstruction.

88. Plaintiff seeks the following relief:

**A. Declaratory / Injunctive (APA and Declaratory Judgment Act):**

89. Declaration that Defendants' July 25, 2024 litigation record position regarding returned invoices and completeness of DFAS documents was unlawful and retaliatory.

90. Order requiring Defendants to identify and produce complete DFAS invoice history, return records, and voucher chains within Defendants' custody/control to the extent required by law, and to cease reliance on false or misleading record narratives.

## B. FCA Retaliation Relief (to the extent permitted by law):

91. Back-pay/front-pay equivalents where applicable;

92. Compensatory damages and special damages;

93. Costs.

94. Plaintiff also seeks such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

95. Plaintiff demands trial by jury on all issues so triable. To the extent any claim against the United States is not triable to a jury, Plaintiff requests a bench trial on those issues.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Enter judgment for Plaintiff;

2. Grant declaratory and injunctive relief as stated above;

3. Award all relief authorized by 31 U.S.C. § 3730(h)(2) to the extent permitted by law;

4. Award costs; and

5. Grant any other relief the Court deems just and proper.

Respectfully submitted,

/s/ Nazir A. Sayar
Nazir A. Sayar, Pro Se
Kabul, Afghanistan
Email: sayardevelopment.inc@gmail.com
Telephone: +93 777 406070
Date: January 13, 2026

EVIDENTIARY APPENDIX — EXHIBIT LIST

A. Past Performance / Access Denials (CPARS/JCCS)

- **EXHIBIT A-1** — USACE Email Confirming Negative JCCS Rating (Oct. 23, 2012)
- **EXHIBIT A-2** — CPARS/NSLC Help Desk: "Technical Support Only / No Policy Authority" (Apr. 22, 2024)
- **EXHIBIT A-3** — JCCS Helpdesk: "Technical Assistance Only; Do Not Review Accounts or Deal with Contracts" (Apr. 23, 2024)
- **EXHIBIT A-4** — JCCS Helpdesk: "Freeze on All Activities with Afghan Vendors" (Apr. 23, 2024)

- **EXHIBIT A-5** — CPARS PMO/NSLC Help Desk: "W90U42-10-D-2006 Does Not Exist in CPARS" (Jun. 26, 2024)
- **EXHIBIT A-6** — CPARS PMO/NSLC Help Desk: "W90U42-11-P-2062 Does Not Exist in CPARS" (Jul. 1, 2024)

## B. DFAS / Invoice Disposition / Payment Routing / FPDS-Funding Narrative

- **EXHIBIT B-1** — DFAS Returned/Unprocessed Invoice Records — Contract No. W90U42-11-P-2062 (2011–2012)
- **EXHIBIT B-1a** — Unprocessed COR-Certified DD250 and Invoice — Contract No. W90U42-11-P-2062 (Aug. 1, 2012)
- **EXHIBIT B-1b** — Unprocessed COR-Certified DD250 and Invoice — Contract No. W90U42-10-D-2006 (2013)
- **EXHIBIT B-2** — DFAS Pay-Station Deviation / FAR 52.232-37 Email (Mar. 1, 2011)
- **EXHIBIT B-3** — Representative DFAS Voucher-Chain / DD-250 Acceptance Evidence (2010–2011)
- **EXHIBIT B-3a** — Contracting Office Email Acknowledging Lack of Funds — Contract No. W90U42-11-P-2062 (Aug. 29, 2011)
- **EXHIBIT B-4** — FPDS Extract Reflecting –$21.3M / "P00001" / Reduced Ceiling Narrative (Feb. 26, 2010)
- **EXHIBIT B-4a** — FPDS-NG Printout Showing $27M Contract Amount (Feb. 13, 2010)
- **EXHIBIT B-4b** — Contract Cover Page Showing $27M Ceiling / Single Award (Feb. 13, 2010)
- **EXHIBIT B-4c** — Modification P00003 (Bilateral) — Option Exercise / "All Other Terms Unchanged" (Feb. 14, 2011)
- **EXHIBIT B-4d** — FPDS Entry Showing NAICS 525190 Coding (NAICS Misclassification Evidence)

## C. ASBCA Record Position

- **EXHIBIT C-1** — Government Counsel Submission to ASBCA (Jul. 25, 2024)

## D. FOIA Final Agency Action

- **EXHIBIT D-1** — DoD OIG FOIA Appeal Decision (Dec. 17, 2025)

## E. Oversight / Hotline / External Reporting Closures & Acknowledgments

- **EXHIBIT E-1** — DoD Hotline Closure Notice (Aug. 7, 2025)
- **EXHIBIT E-2** — DoD Hotline "No Further Action" Notice (Nov. 25, 2025)
- **EXHIBIT E-3** — GAO FraudNet Acknowledgment (Apr. 17, 2024)
- **EXHIBIT E-4** — DoD Hotline Closure Letter (Nov. 4, 2025), Complaint No. 20251031-107092 (Consolidated Closure Notice)
- **EXHIBIT E-5** — OSC Closure Letter (Sept. 8, 2025), OSC File No. DI-25-002381
- **EXHIBIT E-6** — OSD/OGC SOCO Email (Sept. 2, 2025) Redirecting Plaintiff to DoD IG